

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2939

ANGELA TONYAN,

                    *Plaintiff-Appellant*,

v.

DUNHAM'S ATHLEISURE CORPORATION,

                    *Defendant-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 18-cv-00402 — **Barbara B. Crabb**, *Judge*.

ARGUED MAY 19, 2020 — DECIDED JULY 20, 2020

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Angela Tonyan worked as a store manager at Dunham's Athleisure Corporation (Dunham's) when she suffered a series of injuries, requiring multiple surgeries and temporary restrictions to her shoulder, arm, and hand movement. After her doctor imposed permanent restrictions, including one preventing her from lifting more than two pounds with her right arm, Dunham's fired her.

Case: 3:18-cv-00402-bbc   Document #: 59-1   Filed: 08/31/20   Page 2 of 15
Case: 19-2939   Document: 00713672955   Filed: 08/31/2020   Pages: 15

2                                                                No. 19-2939

Dunham's asserts, because of its lean staffing model, that store managers must perform various forms of physical labor, such as unloading and shelving merchandise, as essential functions of their job duties. Tonyan, on the other hand, argues that physical tasks were not essential functions of her job and that, in any event, she was able to perform her job's essential functions.

We conclude that physical tasks were essential functions of Tonyan's job. As a result, in light of the severe restrictions on her movement, no reasonable factfinder could determine that Tonyan was capable of performing the essential functions of her position. We therefore affirm.

## I. Background

**A. Dunham's**

Dunham's, a discount sporting goods retailer, employs a business model designed to cut costs. Dunham's purchases or leases minimal space and stores merchandise in a way that maximizes its use. To do so, it places some merchandise—such as canoes and kayaks—on shelves ranging from five to twelve feet high or hangs them from the ceiling. Roughly half of the inventory sits at or above shoulder height for the average employee, who uses garment hooks to remove merchandise placed beyond shoulder reach.

Similarly, Dunham's toils to keep labor costs low. Each store has a budget for both hourly and salaried employees based on the particular store's sales volume. Dunham's contends that "[p]roviding stores with sufficient staff hours—with management regularly engaged in principal tasks—is necessary to ensure customers are assisted and inventory is unloaded, handled, and displayed in a timely manner." When

a manager cannot perform the requisite physical tasks on a regular basis, Dunham's allocates additional hours to the store for other employees to handle those tasks, which, Tonyan concedes, impacts the efficiency of the staffing model. In particular, the store in Menomonie, Wisconsin, where Tonyan worked at the time of her dismissal, relies on students as a source of hourly labor. Students, though, typically have limited availability and positions sometimes remain empty. As Tonyan admits, a resulting labor shortage can delay merchandise inventorying and an employee's ability to respond to customers.

**B. Job Duties**

Corporate management agreed physical labor was a significant part of Tonyan's job duties, although they varied when describing specifics. District Manager Jeremy Gilson, Tonyan's direct supervisor, estimated Tonyan may have spent up to twenty percent of her day performing manual labor, and up to thirty percent on days when trucks delivered merchandise. Executive Vice President for Human Resources Daniel Cieslak gave a higher estimate: he claimed Dunham's expected Tonyan to spend seventy to eighty percent of her time performing physical labor. Employees have several tools at their disposal to assist with physical tasks, including hooks, pallet jacks, dollies, stools, ladders of varying sizes, and four-way wheeled carts.

The record contains two job descriptions for "Store Management," one from August 2011 and one from September of that same year.[1] They vary only slightly. Both identify similar

---

[1] In her appellate briefing, Tonyan discusses a job description that does not appear in the district court record. The version she recounts

Case: 3:18-cv-00402-bbc Document #: 59-1 Filed: 08/31/20 Page 4 of 15
Case: 19-2939 Document: 00713672955 Filed: 08/31/2020 Pages: 15

areas of responsibility, such as customer service, sales volume, scheduling, merchandising, human resources, training, and general maintenance. The August 2011 version, which Tonyan signed, lists these "essential functions" as:

> Constantly: Stand, Walk, Reach Outward, Handling/Fingering.
>
> Frequently: Reach Above Shoulders, Squat or Kneel, Lift/Carry up to 50 lbs., Push/Pull up to 50 lbs.
>
> Occasionally: Sit, Climb, Crawl, Lift/Carry 51—100 lbs. with assistance.
>
> Not Applicable: Lift/Carry over 100 lbs. without assistance.[2]

The September 2011 version, which contains no signature, differs in only one substantial way: it requires that a manager frequently "Lift/Carry" forty pounds instead of fifty. Neither job description instructs managers *how* to complete the required tasks, as Dunham's allows and expects store managers to delegate some duties. The Human Resources ("HR")

---

differs slightly from those that do appear. For example, Tonyan's preferred job description uses the language "minimum qualifications" instead of "essential functions," whereas the two versions in the district court record invoke the "essential functions" label. After the conclusion of appellate briefing, Tonyan apparently noticed her omission and attempted to supplement the record. We denied her motion, as the district court did not consider this document in the first instance. We note, however, that, even if we had granted Tonyan's motion, she does not explain how "minimum qualifications" differ from "essential functions."

[2] Cieslak quantified "constantly" as almost one hundred percent of the time, "frequently" as fifty percent or more of the time, and "occasionally" as less than fifty percent of the time.

Department created the 2011 job descriptions by modifying a version from 2008 using field research, store observation, and interviews with store managers.

These job descriptions applied not only to Tonyan, but also to Reed Lein, Tonyan's assistant store manager, and Elizabeth Sand, the department manager for apparel. Lein performed physically demanding duties sixty to seventy percent of the time, including placing and pulling merchandise on and off shelves and organizing boxes. Lein is over six feet tall and at least fifty percent of the store merchandise sat above his shoulder. Likewise, Sand reported often engaging in physically demanding tasks, including taking kayaks and treadmills to customers' cars. The store managers preceding Tonyan—Jane Campbell and Lucas Henning—also performed physical tasks. Importantly, Tonyan does not dispute any of these characterizations.

Tonyan, though, says *her* role involved much less physical labor than Dunham's suggests. She contends she had five areas of responsibility: customer service, sales, controlling expenses, controlling shrink, and store maintenance. In her view, only ten percent of her duties were physically demanding, though she admits this contradicts the expectations of corporate management. She frequently delegated physical tasks, especially those involving heavy lifting.

### C. Tonyan's Injuries and Physical Limitations

Dunham's hired Tonyan as an assistant store manager at its Rice Lake, Wisconsin store in 2007. She injured her left arm in 2009, resulting in left rotator cuff surgery in 2010. Dunham's accommodated temporary restrictions on her left arm after her injury and surgery. In 2011, Dunham's promoted

Tonyan to manager of its Menomonie location while these initial temporary restrictions were in place. In January 2012, Tonyan's physician—Dr. Floren—placed permanent restrictions on her left shoulder: lifting limited to fifteen pounds overhead and sixty pounds to her waist, and reaching above the shoulder limited to only occasionally.

Tonyan's injuries plagued not only her left side; they eventually impacted her right as well. At some point in 2013 or 2014, she injured her right shoulder while using a fabric pole to hang jackets. Her condition deteriorated to the point where she could no longer lift her right arm. In June 2014, she had right shoulder surgery and began leave under the Family and Medical Leave Act, 29 U.S.C. § 2601–2654 ("FMLA"). Tonyan returned to work in September, with restrictions including a one-pound lifting limit and a prohibition on reaching forward or above her shoulder with her right arm, among others.

Before long Tonyan aggravated her right shoulder again—this time while pushing a computer terminal away from a wall. As a result, in January 2015, she endured a second right shoulder surgery and started another round of FMLA leave. Tonyan's doctor cleared her for returning to work with several restrictions on her right arm, including a mandate to wear a sling for several hours a day and a lifting limit of five pounds. Dunham's, however, did not allow Tonyan to return to work, citing that she could not lift even a ream of paper.

In May 2015, Tonyan's doctor imposed new temporary restrictions, including a four-hour daily work limit, a one-pound lifting limit, and a bar on reaching above the shoulder. Dunham's again determined that these restrictions were too severe for accommodation and allowed Tonyan to take time

off for additional recovery despite her having exhausted her FMLA leave.

Tonyan finally returned to work in August 2015, after her doctor removed her hours restrictions and cleared her to lift fifteen pounds overhead with both hands and reach above the shoulder with her right arm. Upon returning, though, Tonyan complained of "excruciating" pain. Lein performed many of her job duties during this time, such as lifting, loading, and unloading larger items. Tonyan was visibly in pain while performing physical tasks and would sometimes make audible noises like "ouch, ouch, ouch." Gilson requested and received an allocation of additional hours to the store because Tonyan was unable to perform physical tasks. On one occasion, her store hired someone to take on additional hours.

In September 2015, Tonyan injured her right shoulder while pushing a "light cart" with shirts on it. Later that month, Tonyan told her physical therapist she struggled pulling stuffing out of shoes and taking plastic off clothing, and the therapist noted that Tonyan was unable to lift one pound overhead without pain. Over the next few weeks, Tonyan reported several additional complaints to her physical therapist: she struggled to control the steering wheel of her car, lift one pound overhead, wash her hair, hold a blow dryer for more than two minutes, sweep, vacuum, and carry a bag.

Dr. Thomas O'Brien examined Tonyan for the purpose of a worker's compensation claim in October 2015. He concluded that none of Tonyan's job duties "are of sufficient magnitude or duration to cause any type of rotator cuff injury," and that Tonyan therefore did not require activity restrictions. He also noted that her "work requirements as a full-time store manager do not place the shoulder in a position, nor do they

require right shoulder activities, that would cause an 'injury' to the rotator cuff."

In December 2015, Tonyan's physician issued permanent restrictions on her right arm. These restrictions prevented her from using her right arm to lift more than two pounds, from repetitively grasping, and from reaching forward or more than five percent above the shoulder, even without bearing weight. With these permanent restrictions in place, Dunham's fired her. They sent her a letter, explaining:

> We received and reviewed the latest medical report from Dr. Floran [sic] dated December 21, 2015. Due to the restrictions stated by your doctor the decision has been made to terminate your employment effective today's date. Should you have additional information you feel we should consider please feel free to forward it to us in writing so it can be reviewed.

Tonyan filed a charge of discrimination with the Equal Employment Opportunity Commission and Wisconsin's Equal Rights Division, which issued a right-to-sue letter. Then, on May 24, 2018, Tonyan filed a civil action against Dunham's alleging disparate treatment and failure to accommodate her disability, in violation of 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(1)–(7). Dunham's moved for summary judgment. In opposition to this motion, Tonyan submitted an expert report by Dr. Joseph Hebl, an occupational medicine physician who examined her in 2018. Dr. Hebl opined that Tonyan could perform physical labor but only with restrictions, including no more than occasional reaching above the shoulder. The district court granted the summary judgment motion in its entirety, concluding that Tonyan had failed to meet her burden of proving that she could perform the

essential functions of her position with or without accommodations. Tonyan now appeals.

## II. Discussion

We review a district court's summary judgment ruling de novo, considering the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party. *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019). Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Americans with Disabilities Act ("ADA") prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). There are two types of discrimination claims under the ADA. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015). "First is a disparate treatment claim, where the plaintiff alleges the employer treated him or her differently because of the plaintiff's disability." *Id.* (citing *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021–22 (7th Cir. 1997)). "The second is the employer's failure to provide a reasonable accommodation." *Id.* Although Tonyan brought both types of claims before the district court, on appeal she challenges only the district court's ruling regarding her disparate treatment claim.

To prevail on this claim, Tonyan "must identify a genuine issue of material fact as to whether (1) she is disabled; (2) she is able to perform the essential functions of the job either with

or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013). The parties do not dispute that Tonyan satisfies the first prong (her shoulder disability) and the third prong (her firing). Rather, this case hinges on the second prong—her ability to perform the essential functions of her job with or without reasonable accommodation. Tonyan disputes the district court's determinations that physical tasks were essential functions of her job as a store manager and that, in any event, she was unable to perform these functions.

**A. Essential Functions**

Whether a function is essential is a question of fact, not law. *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016). When resolving this question, we consider the employer's judgment, including written job descriptions, as evidence. 42 U.S.C. § 12111(8); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). We usually do not "second-guess the employer's judgment in describing the essential requirements for the job." *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998). But this deference is not unqualified. We also look to the reality on the ground: the consequences of not requiring the employee to perform the function, the amount of time an employee actually spends performing the function, and the experience of those who previously or currently hold the position. *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 197–98 (7th Cir. 2011) (citing 29 C.F.R. § 1630.2(n)(3)).

Every consideration points to physical tasks as essential functions of Tonyan's job. Both job descriptions in the record—including one that Tonyan signed—list physically demanding tasks as essential functions. Tonyan does not

dispute that HR developed these versions of the job descriptions through a detailed process involving consultation with several sources, including field research, store observation, and manager interviews, indicating that the descriptions reflect the lived experience of managers in Dunham's stores. Even considering the testimony of corporate management in the light most favorable to Tonyan, Dunham's expected Tonyan to spend twenty to thirty percent of her time engaged in physical labor. This is a sufficient amount: a function "need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential." *Basith v. Cook Cty.*, 241 F.3d 919, 929 (7th Cir. 2001). In *Basith*, we concluded that a duty taking only forty-five minutes to an hour of an eight-hour-day is essential. *Id.* Tonyan's own assessment—that ten percent of her duties involved physical labor—still meets this threshold.

Moreover, the evidence Dunham's put in the record shows that managers' performance of physical labor is essential to its business model, as Dunham's incurs extra costs or a diminished quality of customer service if a manager cannot complete physical tasks. To save costs on retail space, Dunham's stores merchandise on elevated shelves and ceilings, which requires employees to reach and lift large items up and down from high locations. Tonyan's inability to perform these tasks required Dunham's to expand its budget to account for additional labor, which was in short supply, to avoid affecting the quality of customer service. Rather than dispute these facts, Tonyan argues that Dunham's incurred an expense for extra hours only once on her behalf, suggesting that Dunham's exaggerates the problem. But the fact that the expense did occur shows it was, at least in one instance, necessary.

And even so, Tonyan has not refuted that extra hours were allocated even if not filled.

The experiences of four employees in store management—Lein, Sand, Campbell, and Henning—confirm that physical labor was a significant part of management positions. Tonyan, meanwhile, has not identified any store manager who did not perform physical labor. Indeed, Tonyan's own experience supports that the job was physically demanding. Despite having restrictions in place for much of the period from 2013 onward, Tonyan repeatedly injured herself on the job and was noticeably in pain while performing routine tasks at work.[3]

Tonyan relies heavily on the fact that she delegated tasks and that corporate management encouraged her to do so. The ability to delegate a task, however, does not necessarily render that task non-essential. "[T]ask reassignments within a job can be unreasonable in situations where the reassigned task is an essential function of the job. In those situations, reassignment or delegation of the task would equate, essentially, to reassignment or delegation of the job itself." *Miller*, 643 F.3d at 199; *see also Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002) (a request to have someone else perform a duty was unreasonable because it "requires another person to perform an essential function" of the job); *Jones v. Walgreen Co.*, 679

---

[3] Tonyan cursorily contends in her reply brief that the argument Dunham's makes about her prior injuries is "a poorly disguised direct defense and argument," pursuant to 42 U.S.C. § 12113(b), and that Dunham's did not raise this defense in its answer. But Dunham's does not suggest that they fired Tonyan out of concern that she would injure herself; rather, Dunham's argues that Tonyan's repeated injuries demonstrate her duties were, in fact, physical.

Case: 3:18-cv-00402-bbc   Document #: 59-1   Filed: 08/31/20   Page 13 of 15
Case: 19-2939      Document: 00713672955      Filed: 08/31/2020      Pages: 15

No. 19-2939                                                              13

F.3d 9, 17 (1st Cir. 2012) ("[T]he fact that at any given time certain tasks ascribed to the role of Store Manager may be delegated or reassigned to other store personnel may inform our inquiry into the job's essential functions but by no means ends it."). This is particularly so here where delegation can result in allocating additional hours that Dunham's often cannot even fill, impacting its business model and, sometimes, customer service.

Tonyan also argues that physical tasks are not an "essential function" of her job pursuant to 29 C.F.R. § 1630.2(n)(2) because the tasks do not satisfy any of the three enumerated reasons in that section. But the provision explicitly states that its list of reasons is non-exhaustive. *Id.* And even if it were a complete list, one of the three enumerated reasons is that "[t]he function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed." *Id.* at § 1630.2(n)(2)(ii). Again, Tonyan does not dispute that, if a manager cannot perform physical tasks, Dunham's must allocate hours for additional labor to perform them.

Lastly, Tonyan argues that physical labor is not an essential function of her position because she is classified as "exempt" under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"). Tonyan does not provide any legal authority explaining why the FLSA "primary duty" test for overtime exemption is relevant here. Moreover, an exempt employee may spend more than fifty percent of his or her time performing non-exempt work, such as manual labor. 29 C.F.R. § 541.700(b). The fact of her FLSA classification therefore does not automatically exclude physical labor as an essential function of her position.

**B. Ability to Perform Essential Functions**

Having determined that physical tasks are essential functions of Tonyan's job, we turn to whether Tonyan could, in fact, perform them. Tonyan "bears the burden of establishing that she could perform the essential functions of the position with or without reasonable accommodation." *Majors*, 714 F.3d at 534. She failed to meet that burden here.

Even looking at the job description in the record most favorable to Tonyan, the essential functions of her job included constant outward reaching and handling, frequent reaching above the shoulder, and frequent lifting of up to forty pounds. The permanent restrictions Tonyan's doctor imposed on December 21, 2015—prohibiting her from using her right arm to lift more than two pounds, reaching forward and above her shoulder more than rarely, and grasping repetitively—would have clearly impeded her ability to perform many essential functions of her position. Dunham's may rely on Tonyan's doctor's assessment of her capabilities when deciding whether she could perform the essential functions of her job. *See Koshinski v. Decatur Foundry, Inc.*, 177 F.3d 599, 603 (7th Cir. 1999).

In response, Tonyan highlights evidence of tools available at Dunham's to assist her with reaching and lifting. But tools were available throughout Tonyan's employment at Dunham's, and they did not permit Tonyan to perform her duties. Indeed, the record shows she delegated them to Lein. Even with tools, a person restricted to lifting no more than two pounds with one of her arms could not lift canoes, for instance, to their proper storage space.

Tonyan also points to the opinions of two medical experts—Dr. O'Brien and Dr. Hebl—but they do not aid her case. To begin, Dr. O'Brien's evaluation took place before Tonyan's doctor assigned her permanent restrictions, which ultimately led to her dismissal. "The relevant inquiry is whether [Tonyan] could perform the essential functions of [her] job at the time [she] was fired." *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 287 (7th Cir. 2015); *see also Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("[A plaintiff's] ability to come to work, or to otherwise perform the essential functions of her job, is examined as of the time of the adverse employment decision at issue."). Dunham's properly relied on the most recently available information about Tonyan's capabilities. Furthermore, Dr. O'Brien's report does not explicitly address whether Tonyan could lift forty pounds, grasp, or perform any of the tasks her own physician specifically prohibited. And Dr. Hebl would have imposed restrictions on reaching outward and above the shoulder—restrictions incompatible with the essential functions of her job. Dr. Hebl's examination also took place two years after Tonyan's dismissal and thus has little bearing on her past capabilities.

### III. Conclusion

For these reasons, we AFFIRM the judgment of the district court.